**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

                                        **Plaintiff,**

        **vs.**                                                **1:22-CV-380**
                                                               **(MAD/DJS)**

**14K MIAMI CUBAN CHAIN, VL: $23,000.00,**

                                        **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**OFFICE OF THE UNITED**                   **ELIZABETH A. CONGER, AUSA**
**STATES ATTORNEY**
100 South Clinton Street
Syracuse, New York 13261-7198
Attorneys for the United States

**GALARNEAU LAW**                          **ERIC M. GALARNEAU, ESQ.**
41 State Street – Suite 604-17
Albany, New York 12207
Attorneys for Claimant Jeffrey C.
Civitello, Sr.

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. BACKGROUND**

**A.      Procedural Background**

        On April 22, 2022, the United States filed a verified complaint for forfeiture _in rem_ for

forfeiture of the Defendant Property as property traceable to the proceeds of offenses in violation

of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D).  _See_ Dkt. No. 1.  A warrant for the arrest of the property

_in rem_ was issued that same day, _see_ Dkt. No. 2, and the property was taken into the custody of

the United States Marshals Service on June 22, 2022.  _See_ Dkt. No. 4.

On September 19, 2022, Attorney Eric M. Galarneau filed a claim on behalf of Claimant Jeffrey C. Civitello, Sr. ("Claimant") to the Defendant Property pursuant to Rule G(5) of the Supplemental Rules for Admiralty and Maritime Claims.  *See* Dkt. No. 9.  Claimant's verified answer was filed on October 10, 2022.  *See* Dkt. No. 10.

On December 12, 2022, the Government mailed its first set of special interrogatories to Claimant's counsel by certified mail, return-receipt requested to the Galarneau Law Firm PLLC, 41 State Street, Suite 604-17, Albany, New York 12207.  *See* Dkt. No. 12-1 at ¶ 2.  The USPS.com tracking number for the package shows delivery on December 15, 2022, at 3:05 p.m. *See id.* at ¶ 4.  The special interrogatories were accompanied by a cover letter advising of the twenty-one-day deadline window within which Claimant was required to submit his answers and objections to the special interrogatories.  *See id.* at ¶ 3.  Claimant's answers and objections to the special interrogatories were due on Tuesday, January 3, 2023.[1]  *See id.* at ¶ 5.

Claimant never responded to the special interrogatories.  *See id.* at ¶ 6.  Instead, on January 25, 2023, Claimant filed a motion to stay pursuant to 21 U.S.C. § 881(i) and 18 U.S.C. § 981(g).  *See* Dkt. No. 11.  In his motion, Claimant contended that "[r]esponding to the Government discovery request would necessitate providing information that could incriminate the Claimant on either or both of the criminal Indictments noted above pending the conclusion of the criminal matter."  Dkt. No. 11-1 at ¶ 10.  In response, the Government claimed that Claimant failed to establish that he has standing in this forfeiture action and, regardless, he has failed to show how disclosure of the information pertaining to his alleged ownership interest in the Defendant Property would burden his right against self-incrimination.  *See* Dkt. No. 12 at 6.  In a

---

[1] Calculated from December 12, 2022, the date when the special interrogatories were mailed to Claimant, the twenty-first day fell on January 2, 2023.  As that date was a federal holiday, Claimant's answer and objections were due on the following day.

2

July 14, 2023 Memorandum-Decision and Order, the Court denied Claimant's motion to stay and granted the Government's cross-motion to strike the claim and verified answer.  *See* Dkt. No. 14.

On July 24, 2023, the Government submitted its application for entry of default, which the Clerk entered the following day.  *See* Dkt. Nos. 16 & 17.  Currently before the Court are the Government's motion for default judgment and Claimant's cross-motion to vacate the entry of default.

**B.**     **Related Criminal Actions**

*1. United States v. Robert J. Ingrao, et al.*, **No. 1:21-cr-343 (N.D.N.Y.)**

Claimant and his son, Jeffrey C. Civitello, Jr., were the subjects of a long-term investigation conducted by Task Force Officers ("TFOs") with the United States Drug Enforcement Agency ("DEA").  *See* Dkt. No. 11-1 at ¶ 3.  On April 2, 2021, a complaint was filed against Robert Ingrao in the United States District Court, Northern District of New York.  *See id.* at ¶ 4.  That complaint alleged that Ingrao transported nine kilograms of cocaine in a vehicle belonging to Claimant's son.  *See id.* at ¶ 4; *see also United States v. Ingrao, et al.*, No. 1:21-cr-343 (N.D.N.Y.).  In this first criminal action, on May 25, 2022, a superseding indictment was filed against Claimant, his son, and others relating to the transport of nine kilograms of cocaine in April 2021.  *See Ingrao*, No. 1:21-cr-343, Dkt. No. 55.  Trial commenced in this action on April 17, 2023, and on April 26, 2023, Defendants Jeffrey C. Civitello, Sr., Jeffrey C. Civitello, Jr., and Richard D. Sinde were found guilty on all counts.[2]

*2. United States v. Jeffrey C. Civitello Jr.*, **No. 1:21-cr-386 (N.D.N.Y.)**

---

[2] The remaining Defendants in this case (Robert Ingrao and Christopher Kelly) pleaded guilty before trial and Mr. Kelly was a witness for the Government at trial.

3

On October 21, 2021, TFOs with the DEA executed a search warrant at the apartment of Claimant's son located at 2452 Albany Street in Schenectady, New York.  *See id.* at ¶ 5.  Drugs and firearms were allegedly recovered from the apartment, as was the chain that is the subject of this proceeding.  On November 4, 2021, an indictment was filed against Claimant's son charging him with violations of 21 U.S.C. § 924(c) and 21 U.S.C. §§ 841(a)(1), (b)(1)(D), in connection with the October search warrant.  *See United States v. Jeffrey C. Civitello, Jr.*, No. 1:21-cr-386, Dkt. No. 5 (N.D.N.Y.).  Although a superseding indictment was filed in this case on June 29, 2023, Jeffrey C. Civitello, Jr. remains the only named defendant, and a change of plea hearing is set for October 31, 2023.

## II. DISCUSSION

### A.    Motion to Vacate Entry of Default

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment ... is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).  Rule 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c).  Rule 60(b)'s "stricter standard of excusable neglect ... [is] applicable only to the vacatur of a final judgment." *Holford USA Ltd., Inc. v. Harvey*, 169 F.R.D. 41, 43 (S.D.N.Y. 1996) (citing *Meehan v. Snow*, 652 F.2d 274, 276-77 (2d Cir. 1981)).  Because there is no default judgment, the "excusable neglect" standard is not applicable in this case.

Rather, "[w]here, as here, the clerk has entered a notation of default but a default judgment has not yet been rendered, the Court applies the 'good cause' standard set forth in Rule 55(c)." *Team Kasa, LLC v. Humphrey*, No. 17-cv-1074, 2018 WL 1867117, *2 (E.D.N.Y. Jan. 24,

4

2018) (citations omitted).  While Rule 55(c) does not define the term "good cause," the Second Circuit has established three criteria that district courts must consider in deciding whether to relieve a party from a default: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *accord Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 454-55 (2d Cir. 2013); *Holzman Fabian Diamonds Ltd. v. R & E Diamonds LLC*, No. 17-cv-9489, 2019 WL 1099944, *1 (S.D.N.Y. Mar. 8, 2019); *Ghim Li Int'l Pte. Ltd. v. Am. Fashion Network Imports, Inc.*, No. 5:17-cv-974, 2019 WL 1380432, *3 (N.D.N.Y. Jan. 31, 2019).  "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil Corp.*, 10 F.3d at 96 (citation omitted).  These criteria must be applied in light of the Second Circuit's strong "preference for resolving disputes on the merits." *Brien v. Kullman Indus., Inc.*, 71 F.3d 1073, 1077 (2d Cir. 1995) (citing *Enron Oil Corp.*, 10 F.3d at 95); *accord Meehan*, 652 F.2d at 277. Because of this preference, doubts "should be resolved in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d at 96.

Ultimately, the determination of whether to set aside a default is left to the "sound discretion of the judge, 'the person most familiar with the circumstances of the given case and ... in the best position to evaluate the good faith and credibility of the parties.'" *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir. 1991) (quotation and other citation omitted).  The burden of showing that vacatur is justified rests with the moving party.  *See Sony Corp. v. Elm State Elec.*, 800 F.2d 317, 320 (2d Cir. 1986).

### 1. Willfulness

5

While a showing of more than "negligence or gross negligence" is required, "the court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." *McNulty*, 137 F.3d at 738. "The boundary of willfulness lies somewhere between a case involving a negligent filing error, which is normally considered an excusable failure to respond, and a deliberate decision to default, which is generally not excusable." *King v. Galluzzo Equip. & Excavating Inc.*, 223 F.R.D. 94, 97 (E.D.N.Y. 2004) (citing *Int'l Painters and Allied Trades Union and Indus. Pension Fund v. H.W. Ellis Painting Co., Inc.*, 288 F. Supp. 2d 22, 26 (D.D.C. 2003)); *see also Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996).

Rule G(8)(c)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions provides that at any time before trial, the Government may move to strike a claim or answer for failing to comply with Rule G(5) or (6) or because the claimant lacks standing. *See* Supp. Rule G(8)(c)(i). In the present matter, the Court struck Claimant's claim because of his failure to respond to the Government's special interrogatories as required by Supplemental Rule G(6)(b). As the Government notes, courts have refused to vacate an entry of default where claimants have failed to respond to special interrogatories. *See, e.g.*, *United States v. $85,000.00 in U.S. Currency*, No. 10-cv-371, 2011 WL 1063295, *2 (D. Md. Mar. 21, 2011).

Here, Claimant failed to satisfactorily explain his failure to respond to the special interrogatories. In his cross-motion, Claimant asserts that his default was not willful, again alleging that the 'prosecution of the claim would entail the disclosure of potentially incriminating information to the Government with respect to his impending criminal trial." Dkt. No. 21-2 at 3. Providing no specific basis for this conclusion, Claimant instead states that any "seemingly innocuous responses" could imperil his position in the criminal proceeding. *See id.* at 5. The

6

Court finds this argument unpersuasive in light of the facts of the instant civil forfeiture proceeding.

First, the Claimant's request to stay the civil forfeiture proceeding only emerged after the Government contacted counsel for Claimant to find out why he had failed to respond to the special interrogatories. *See* Dkt. No. 12-1 at ¶ 7. As his verified claim was filed on September 19, 2022, *see* Dkt. No. 9, and his verified answer was filed on October 10, 2022, *see* Dkt. No. 10, Claimant could have sought to stay the matter immediately upon entering the litigation. Or, he could have at least sought a stay within the twenty-one day period within which he had to respond to the special interrogatories. Instead, he failed to take any action until after he was contacted by the Government. Rather than signifying that the Claimant was, in good faith, concerned that substantiating his claim in the civil action would compromise his position in the criminal matter, the decision to request a stay instead appears to be a tactical position taken to avoid the consequences of his failure to comply with the statutory requirements governing the civil forfeiture action.

Moreover, because of the nature of his claim of ownership – that the Defendant Property was given to him by his late father – it remains highly implausible that any documentation or information provided by Claimant would compromise his position in the criminal proceeding. Instead, Claimant argues that he was without a true choice as to how he might proceed in the matter and alleges that he was faced with the dilemma of being forced to "either surrender his property or risk his Fifth Amendment rights." Dkt. No. 21-2 at 7. However, as the Court previously noted in the Memorandum-Decision and Order denying Claimant's request for a stay, Claimant could have responded in any number of reasonable ways that would have averted the striking of his claim and the entry of default. Further, his blanket assertion of Fifth Amendment

7

privilege in response to special interrogatories is unsupported, and unsupportable. *See United States v. Vazquez-Alvarez*, 760 F.3d 193, 198 (2d Cir. 2014) (affirming the district court's grant of default judgment to the Government where the claimant refused to answer the Government's interrogatories directed at the claimant's standing and instead moved to dismiss, because the claimant was required to establish standing to bring his claim and, because the claimant was a stranger to the litigation absent standing, the district court properly declined to address the argument's raised in the claimant's motion to dismiss); *United States v. $31,000.00 in U.S. Currency*, 774 Fed. Appx. 288, 290-91 (6th Cir. 2019) (holding that the district court properly granted the Government's motion to strike where the claimants refused to answer any of the special interrogatories served by the Government, claiming that it would burden their Fifth Amendment rights against self-incrimination, and noting that the claimants had abused their Fifth Amendment privileges by refusing to answer even basic, non-incriminating inquiries); *United States v. $46,340.00 in U.S. Currency*, 791 Fed. Appx. 596, 596-97 (6th Cir. 2020) (same); *United States v. $68,812.00 in U.S. Currency*, 831 Fed. Appx. 205, 206-07 (6th Cir. 2020) ("The Fifth Amendment privilege is a 'shield,' not a 'sword' to cut down [the claimant's] burden of production") (quotation and other citation omitted).

As such, the Court finds that Claimant has failed to establish that the default was premised upon anything other than his willful failure to comply with Supplemental Rule G(6)(b), and his strategic efforts to avoid the consequences of that decision.

### 2. Meritorious Defense

On the question of meritorious defense, "[t]he test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil Corp.*, 10 F.3d at 98.  "The

defaulting defendant 'need only meet a low threshold to satisfy this factor.'" *Gench v.*

*HostGator.com LLC*, No. 14-cv-3592, 2015 WL 3757120, *5 (S.D.N.Y. June 17, 2015) (quoting

*MD Produce Corp. v. 231 Food Corp.*, 304 F.R.D. 107, 110 (E.D.N.Y. 2014)); *see also Am. All.*

*Ins. Co.*, 92 F.3d at 61 (holding that the defense "need not be ultimately persuasive at this stage"

to satisfy this factor).   Nonetheless, a defendant must still "'articulate a defense with a degree of

specificity which directly relates that defense to the allegations set forth in the plaintiff's

pleadings and raises a serious question as to the validity of those allegations.'" *FedEx*

*TechConnect, Inc. v. OTI, Inc.*, No. 12-cv-1674, 2013 WL 5405699, *8 (S.D.N.Y. Sept. 23, 2013)

(quoting *Salomon v. 1498 Third Realty Corp.*, 148 F.R.D. 127, 130 (S.D.N.Y. 1993)) (other

quotation omitted).

As to his meritorious defense, Claimant contends that the Defendant Property was

"bequeathed to him by his father upon his death." Dkt. No. 21-2 at 2.  This is the same bald

assertion of ownership that Claimant could not be substantiated without compromising his

position in the parallel criminal matter: "there is no way for Mr. Civitello to answer the discovery

requests without potentially incriminating himself in either or both of the pending drug cases."

Dkt. No. 11-2 at 5.  In response to this assertion, the Court noted as follows:

> Since Claimant alleges that the Defendant Property, a gold chain,
> was given to him by his late father, this conclusory assertion is
> particularly unpersuasive.  The Court is unable to fathom how
> Claimant providing any facts and documentation legitimately
> supporting his claim of ownership to the Defendant Property would
> burden his right against self-incrimination in the parallel criminal
> proceedings.  Further, when the Government sent its special
> interrogatories to investigate the nature of Claimant's alleged
> ownership of the Defendant Property, Claimant simply failed to
> respond.  As the Government notes, at a minimum, Claimant could
> have advised the Government of the specific questions in the
> special interrogatories that he believed would burden his right
> against self-incrimination and could have answered the remaining
> questions.

Dkt. No. 14 at 8.

The same holds true in the present matter.  As Claimant contends that he is unable to provide any non-incriminating evidence in support of this claim (despite the fact that trial in the criminal matter has now concluded), it follows that he has not presented evidence of facts that, if proven at trial, would present a complete defense.  Claimant's entirely conclusory assertions are insufficient to meet his burden.  *See United States v. $39,000.00 in U.S. Currency*, 951 Fed. Appx. 740, 742 (6th Cir. 2020) (holding that the claimant cannot use a "blanket assertion" of the Fifth Amendment privilege as "'a sword ... to make one's assertions of ownership impervious to attack'") (quotation and other citation omitted).

As Claimant's alleged meritorious defense relies upon a claim that he has refused to substantiate, and because it is rendered implausible by the facts surrounding its seizure, it is an insufficient basis upon which to vacate the entry of default.

### 3. Prejudice to Adversary

The verified complaint for the forfeiture of the Defendant Property was filed on April 22, 2022, and Claimant's verified claim was filed on September 19, 2022.  *See* Dkt. Nos. 1 & 9. Now, more than a year after his initial appearance in this matter, Claimant has failed to establish standing, and has failed to fully participate in this litigation.  Claimant's trial in the parallel criminal matter is now completed and the risk alleged in his motion to stay is no longer viable. Nevertheless, Claimant has still offered no documentation or non-conclusory allegations in support of the validity of his alleged ownership of the Defendant Property and has simply reiterated the meritless claims set forth in his motion to stay.  This is indicative of the fact that Claimant will not and cannot substantiate his claim.  Consequently, vacating the default would simply force the Government to expend additional time and resources to litigate a futile claim.

Accordingly, the Court finds that all three factors weigh in the Government's favor and Claimant's motion to vacate the entry of default must be denied.

**B.      Motion for Default Judgment**

"Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant." *Robertson v. Doe*, No. 05-CV-7046, 2008 WL 2519894, *3 (S.D.N.Y. June 19, 2008).  "First, under Rule 55(a), when a party fails to 'plead or otherwise defend ... the clerk must enter the party's default.'" *Id.* (quoting Fed. R. Civ. P. 55(a)).  "Second, pursuant to Rule 55(b)(2), the party seeking default judgment is required to present its application for entry of judgment to the court." *Id.*  "Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(2)).  "When an action presents more than one claim for relief ..., the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties ... if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).

When a court considers a motion for the entry of a default judgment, it must "accept[ ] as true all of the factual allegations of the complaint[.]" *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (citations omitted).  "However, the court cannot construe the damages alleged in the complaint as true." *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds v. Catone Constr. Co., Inc.*, No. 08-CV-1048, 2009 WL 4730700, *2 (N.D.N.Y. Dec. 4, 2009) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).  "Rather, the court must 'conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Id.* at *2 (quoting *Alcantara*, 183 F.3d at 155).  This inquiry "involves two tasks: determining the proper rule for calculating damages on such a claim, and

assessing plaintiff's evidence supporting the damages to be determined under this rule."

*Alcantara*, 183 F.3d at 155.  Although the court may hold a hearing to determine damages, a

hearing is not necessary where the evidence submitted in support of the motion supports the

amount of damages claimed.  *See Cement & Concrete Workers Dist. Council Welfare Fund v.*

*Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citation omitted).

After carefully considering this matter, the Court finds that the Government is entitled to

default judgment and an order of forfeiture for the reasons stated in the affidavit of counsel for the

Government, AUSA Elizabeth Conger.  *See* Dkt. No. 18-2.  To those reasons, the Court adds the

following analysis, which is intended to supplement, not supplant, the reasoning of counsel for

the Government.

"In order to contest a governmental forfeiture action, claimants must have both standing

under the statute or statutes governing their claims and standing under Article III of the

Constitution as required for any action brought in federal court." *United States v. Cambio Exacto,*

*S.A.*, 166 F.3d 522, 526 (2d Cir. 1999).  "To establish statutory standing, a claimant asserting

rights in property that has been seized and that is the subject of a forfeiture action *in rem* must file

a verified claim within ten days after process has been executed, unless the court grants an

extension." *Cambio Exacto*, 166 F.3d at 526 (citing Supplemental Rules for Certain Admiralty

and Maritime Claims, Rule C( 6)).  To establish Article III standing, a claimant must demonstrate

(1) an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3)

that can likely be redressed by a favorable decision.  *See Mantena v. Johnson*, 809 F.3d 721, 731

(2d Cir. 2015).

In the present matter, Claimant was the only individual to assert a claim for the Defendant

Property.  However, as noted above, the Court struck Claimant's verified claim and answer

because he failed to establish standing to pursue his claim. *See* Dkt. No. 14.  Moreover, the Court has denied his motion to vacate the entry of default.  Because no other person has asserted a claim within thirty days of service or thirty days after the publication of notice, any potential claimants lack statutory standing to claim a right to the Defendant Property. *See United States v. Conolly*, 694 Fed. Appx. 10, 13 (2d Cir. 2017) (citing *Cambio Exacto, S.A.*, 166 F.3d at 526).

Accordingly, the Court grants the Government's motion for default judgment and for an order of forfeiture.

### III. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, the Court hereby

**ORDERS** that Claimant Jeffrey C. Civitello Sr.'s cross-motion to vacate the entry of default (Dkt. No. 21) is **DENIED**; and the Court further

**ORDERS** that the Government's motion for default judgment and for an order of forfeiture (Dkt. No. 18) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter a final order of forfeiture against the Defendant Property, which shall be forfeited to the Government; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in the Government's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 27, 2023
      Albany, New York

Mae A. D'Agostino
U.S. District Judge